**[Cite as *State v. Rumbaugh*, 2024-Ohio-364.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Appellee | : | C.A. No. 2023-CA-8 |
| v. | : | Trial Court Case No. 2022 TRD 08255 |
| JEFFREY A. RUMBAUGH, JR. | : | (Criminal Appeal from Municipal Court) |
| Appellant | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on February 2, 2024

· · · · · · · · · · ·

DONALD K. POND, JR., Attorney for Appellant

JONATHAN B. FREEMAN, Attorney for Appellee

· · · · · · · · · · · ·

LEWIS, J.

{¶ 1} Defendant-Appellant Jeffrey A. Rumbaugh, Jr., appeals from his convictions for failure to stop after an accident and failure to maintain an assured clear distance ahead following a bench trial in the Miami County Court of Common Pleas. For the reasons that follow, we will affirm the judgment of the trial court.

I.    Facts and Course of Proceedings

{¶ 2} On December 12, 2022, Rumbaugh was cited by a Tipp City police officer for violations of R.C. 4549.02 and Tipp City Codified Ordinance 73.10(A).   These citations involved a two-car accident that occurred on the afternoon of October 21, 2022, on the off-ramp at Exit 69 traveling northbound on Interstate 75 near Tipp City.

{¶ 3} A bench trial was held on April 6, 2023.   Sergeant Darren Soutar of the Tipp City Police Department testified first for the State.   Trial Tr. 6-34.   On October 21, 2022, at around 4:18 p.m., he was dispatched to the off-ramp of Exit 69 heading northbound on Interstate 75 near Tipp City.   This exit connects with South County Road 25-A.   Sgt. Soutar arrived about five or six minutes after receiving the dispatch.   He was informed that he was being sent to a two-vehicle accident and that one vehicle had fled the scene. Soutar arrived at Casey's gas station just off Exit 69 and spoke with Jacqulyn Reno, the driver of a white SUV that was rear-ended, and her son, Caleb Reno, who had been a passenger in his mother's vehicle.   Soutar noted that there was damage to the rear bumper of the SUV, primarily involving some scuff marks and cracking.   According to Jacqulyn and Caleb, the male driver who hit their car was driving a "blue-ish colored car." During his testimony, Sgt. Soutar was shown video taken by an Ohio Department of Transportation ("ODOT") camera.   He testified that a portion of the video showed the white SUV and a blue sedan behind it and later showed the blue sedan heading in the other direction at a high rate of speed.   The video, however, did not capture the accident.

{¶ 4} Based on license plate information subsequently emailed to him by the Reno

family, Sgt. Soutar went to Rumbaugh's residence several weeks later to question him about the accident. While there, Soutar took pictures of Rumbaugh's vehicle, which had considerable damage to the right side of the front of the vehicle around the headlight and grill. Rumbaugh explained that this damage to his vehicle had occurred on October 18, 2022, while the vehicle was parked and unattended at his apartment. Rumbaugh had not reported the damage to the police. Soutar decided to issue citations to Rumbaugh related to the October 21, 2022 accident involving the Renos based on the damage to his vehicle, the fact that no other male drove Rumbaugh's vehicle, and the description from the Renos.

{¶ 5} Jacqulyn Reno testified next for the State. Trial Tr. 35-55. According to Jacqulyn, she was driving her son to swim practice on October 21, 2022, when they discovered that her son had forgotten to bring his swimsuit. She decided to drive her son home, because it was too late to get a swimsuit and attend swim practice that day. As she was traveling northbound on Interstate 75, she took Exit 69 and proceeded to the right-hand lane of the off-ramp. It was around 4:15 p.m., and her car was stationary with about three cars in front of her waiting to turn. While she was completely stopped, a car crashed into the back bumper of the Yukon GM Denali XL she was driving. Jacqulyn testified that she could see a male with short hair driving the grey car that hit her. She could also see in her rearview mirror that the car that had hit her had severe damage to its bumper, more than she would expect from just this accident. She assumed that the driver who had hit her car would pull off the road and exchange insurance information with her, so she planned to turn right and drive into Casey's gas station in order to

exchange information. But as she was preparing to turn, she noticed that the car that had hit her drove around the left side of her car, turned left at the light, and sped away. After pulling into Casey's gas station, Jacqulyn called the police to report the accident.

{¶ 6} Caleb Reno also testified for the State. Tr. 56-73. He was 16 years old. On the afternoon of October 21, 2022, he was in the passenger seat riding home with his mother when a grey car driven by a male with brown hair and frosted tips crashed into the back of his mom's vehicle. A few days later, his dad was driving him to swimming practice when they noticed a car in the parking lot of a Dollar General store that fit the description of the car Caleb had witnessed crashing into his mother's car. His father took pictures of the car, the license plate of the car, and the male who got into the car. At trial, Caleb identified this person as Rumbaugh and testified that Rumbaugh was the individual he saw driving the car that had crashed into his mother's car.

{¶ 7} Curtis Reno testified last for the State. *Id.* at 73-78. He was Jacqulyn's husband and Caleb's father. He was driving Caleb to swim practice when Caleb saw a car in the Dollar General parking lot that looked like the car that had rear-ended his mother's car. Curtis took pictures of Rumbaugh's Toyota Corolla parked in the Dollar General parking lot and of Rumbaugh as he got into the driver's side of the car. The color of the car in the pictures was a mixture of blue and grey.

{¶ 8} Rumbaugh testified last at trial. *Id.* at 81-111. He denied being in any accident involving the Reno family. He testified that, on the day of the accident, he made a number of Door Dash deliveries under his girlfriend's account from 1:00 p.m. until about 4:00 or 4:30 p.m. He and his girlfriend were leasing the Toyota Corolla that he was

driving on that day. As of October 21, 2022, he did not have any automobile insurance due to what he explained was a lapse of insurance without his knowledge. According to Rumbaugh, he could not have been involved in the car accident at issue, because he had a picture on his phone showing that he had completed a Door Dash delivery at 4:20 p.m. In support of his contention, Rumbaugh submitted a photo of a bag of McDonald's food sitting on a porch that was time-stamped at 4:20 p.m. He testified that this delivery was to apartments located in the Lilac Lane area behind a car dealership in Troy. The picture of the McDonald's bag did not contain a location on it. Rumbaugh did not testify how far the Lilac Lane location was from the scene of the accident.

{¶ 9} When asked about the damage to his car, Rumbaugh explained that the damage was there a few days before the October 21, 2022 accident. He submitted time-stamped text messages and pictures from his phone that showed his vehicle had considerable damage to its front as of October 18, 2022, a few days before the accident involving the Reno family. He believed this damage to his vehicle had occurred while it was parked behind his residence. Rumbaugh conceded that just because his car was damaged on October 18th did not necessarily mean that his car was not involved in an accident on October 21st, but he contended that a comparison of the photos from October 18, 2022, and the photos Sgt. Soutar took in December 2022 did not show any additional damage. Rumbaugh explained that he did not report to the police the damage to his vehicle that occurred on October 18, 2022, because he feared getting into trouble for not having insurance at that time. Rumbaugh agreed that there was damage to the front of his car on both the left- and right-hand sides. Rumbaugh could not definitively state

whether or not it was his car on the ODOT video.

{¶ 10} On April 20, 2023, a disposition hearing was held. At the hearing, the trial court announced guilty verdicts on both counts. The court then stated, in part:

> [T]he Court is going to make some further findings that the Defendant did have prior damage to his motor vehicle. That damage appeared on the video uh, and the Court can see that damage that was already, uh left, uh prior to uh, the incident in this case. The Court finds that the Defendant's testimony was not credible and the Court does finds [sic] that the eyewitness's testimony of Caleb Reno was a very credible witness.

April 20, 2023 Disposition Tr. 3.

{¶ 11} The trial court ordered Rumbaugh to pay restitution in the amount of $2,325.11, suspended Rumbaugh's driver's license for one year, imposed fines and court costs, and sentenced him to 180 days in jail. The trial court suspended all 180 days on the conditions that Rumbaugh have no similar offense during the two-year probation period and pay the restitution amount.

{¶ 12} Rumbaugh filed a timely notice of appeal.

## II.     Rumbaugh's Conviction Was Supported by Sufficient Evidence

{¶ 13} Rumbaugh's first assignment of error states:

> The trial court erred by entering guilty verdicts against Appellant Jeffrey Rumbaugh in the absence of sufficient evidence, contrary to due process and the Fifth and Fourteenth Amendments to the United States

Constitution and Article I, Section 16 of the Ohio Constitution.

{¶ 14} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 15} Rumbaugh was charged with failure to stop after an accident in violation of R.C. 4549.02(A)(1), which provides:

> In the case of a motor vehicle accident or collision with persons or property on a public road or highway, the operator of the motor vehicle, having knowledge of the accident or collision, immediately shall stop the operator's motor vehicle at the scene of the accident or collision. The operator shall remain at the scene of the accident or collision until the operator has given the operator's name and address and, if the operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor vehicle, to all of the following:
>
> (a) Any person injured in the accident or collision;

(b) The operator, occupant, owner, or attendant of any motor vehicle damaged in the accident or collision;

(c) The police officer at the scene of the accident or collision.

{¶ 16} Under R.C. 4549.02(A)(1), the State was required present evidence that there was an accident to, or collision with, persons or property upon the roadway and that Rumbaugh failed to report the accident to the operator of the motor vehicle damaged before he left the scene of the accident. *State v. Teeple*, 3d Dist. Seneca No. 13-17-28, 2018-Ohio-1767, ¶ 19, citing R.C. 4549.02(A).

{¶ 17} Rumbaugh also was charged with a violation of Tipp City Codified Ordinance Number 73.10(A), which provides that "No person shall operate a motor vehicle at a speed greater or less than is reasonable or proper, * * * and no person shall drive any motor vehicle in and upon any street or highway at a greater speed than will permit him or her to bring it to a stop within the assured clear distance ahead." This language is virtually identical to the language contained in R.C. 4511.21(A). The elements necessary to establish a violation of R.C. 4511.21(A) are " 'that the driver collided with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible.' " *Grout v. Joseph*, 2d Dist. Clark No. 2000-CA-20, 2000 WL 1513930, *2 (Oct. 13, 2000), quoting *Pond v. Leslein*, 72 Ohio St.3d 50, 52, 647 N.E.2d 477 (1995).

{¶ 18} The testimony of Jacqulyn and Caleb Reno was sufficient evidence to support Rumbaugh's conviction. Jacqulyn testified that she was sitting stationary in her

car on the off-ramp to Exit 69 on Interstate 75 when the driver behind her struck her vehicle. She identified the driver as a male driving a sedan. Jacqulyn also testified that the driver who struck her vehicle fled the scene of the accident without exchanging any insurance information. Jacqulyn submitted an estimate of the damage to her vehicle. Caleb testified that he was able to see the driver of the vehicle that struck the car in which he was a passenger and that this driver fled the scene of the accident. At trial, Caleb was able to identify Rumbaugh as the driver of the vehicle that struck his mother's vehicle. The testimony of Jacqulyn and Caleb Reno was sufficient to establish violations of R.C. 4549.02(A) and Tipp City Codified Ordinance 73.10(A).

{¶ 19} Rumbaugh contends that the State failed to prove its case against him because (1) he was making deliveries for Door Dash several miles away at the time of the hit-skip collision; (2) his car was damaged three days prior to the hit-skip collision; (3) Jacqulyn Reno could not identify Rumbaugh; (4) Caleb Reno's "after-the-fact identification of Rumbaugh warrants dubious weight" because he failed to describe the physical attributes of the hit-skip driver immediately after the accident; and (5) the ODOT cameras did not film any collision. Appellant's Brief, p. 11.

{¶ 20} The trial court found that Caleb Reno's testimony was credible and Rumbaugh's testimony was not credible. Despite this, Rumbaugh contends that Caleb's identification of Rumbaugh "warrants dubious weight." However, "[i]n deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197

Ohio App.3d 505, 2011-Ohio-6267, 968 N.E.2d 27, ¶ 25 (1st Dist.).   Further, there was ample reason for the trial court to reject Rumbaugh's alibi testimony.   For example, the picture he used to attempt to establish his alibi did not contain a location on it.   Further, he did not establish how far away his last Door Dash delivery had been from where the accident occurred and whether such a distance could have been traveled between the time of the accident and his last Door Dash delivery.   Based on the estimates given as to when the crash occurred, Rumbaugh would have had a few minutes to travel to his last Door Dash delivery after the accident.   Moreover, no evidence was presented as to when Rumbaugh picked up the McDonald's order for his last Door Dash delivery and from what McDonald's location Rumbaugh was traveling.   Rumbaugh also could not state with any certainty whether the vehicle that appeared on the ODOT video was or was not his vehicle.   Finally, the fact that Rumbaugh's vehicle had been damaged three days before the date of the accident involving the white SUV did not mean he could not have been in an accident three days later.   He conceded this point.

{¶ 21} The evidence presented at trial was sufficient to support Rumbaugh's convictions.   The first assignment of error is overruled.

III.   Rumbaugh's Convictions Were Not Against the Manifest Weight of the Evidence

{¶ 22} Rumbaugh's second assignment of error states:

The trial court erred by entering guilty verdicts against Jeffrey Rumbaugh.   The verdicts were against the manifest weight of the

evidence, contrary to due process and the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

{¶ 23} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 24} The evidence in this case does not weigh heavily against Rumbaugh's convictions. Rather, an eyewitness testified that Rumbaugh crashed into a stationary vehicle on an interstate exit ramp and then left the scene of the accident without identifying himself and exchanging insurance information. While Rumbaugh relies heavily on his alibi of delivering food at a residence at the time of the crash, the only evidence he submitted to support his alibi was his testimony and a picture from 4:20 p.m. on the day of the accident. The picture did not reflect the location at which it was taken, and he did not appear in the picture. The trial court chose to believe the testimony of an eyewitness over Rumbaugh's testimony. We cannot conclude on the record before us that the trier of fact clearly lost its way in doing so.

**{¶ 25}** The second assignment of error is overruled.

IV.    Conclusion

**{¶ 26}** Having overruled both of Rumbaugh's assignments of error, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

EPLEY, P.J., and WELBAUM, J., concur.